IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

HOPE VAN LEUVAN                                                                                PLAINTIFF

VS.                                    Civil No. 2:15-cv-02143

CAROLYN W. COLVIN                                                                          DEFENDANT
Acting Commissioner, Social Security Administration

**MEMORANDUM OPINION**

Plaintiff, Hope Van Leuvan, brings this action pursuant to § 205(g) of Title II of the Social Security Act ("The Act"), 42 U.S.C. § 405(g) (2010), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("SSA") denying her application for a period of disability and Disability Insurance Benefits ("DIB") under Title II of The Act.

The Parties have consented to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings. ECF No. 5.[1]  Pursuant to this authority, the Court issues this memorandum opinion and orders the entry of a final judgment in this matter.

**1.     Background:**

Plaintiff protectively filed her DIB application on April 23, 2012, alleging she was disabled due to degenerative disc disease of the cervical and lumbar spine and obesity. (Tr. 66-67). Plaintiff's alleged an onset date was April 14, 2012. (Tr. 154). Her disability applications were denied initially and again upon reconsideration. (Tr. 71-73, 74-77).

---

[1] The docket numbers for this case are referenced by the designation "ECF No. ___."  The transcript pages for this case are referenced by the designation "Tr. __."

1

Thereafter, Plaintiff requested an administrative hearing, and the request was granted. (Tr. 75-77). Plaintiff's administrative video hearing was held on June 5, 2013. (Tr. 28-65). Plaintiff was present and represented by counsel, Shanelle Kusher. *Id.* Plaintiff and Vocational Expert ("VE") John Massey testified at the hearing. *Id*. At this administrative hearing, Plaintiff was forty-eight (48) years old (Tr. 34), which is defined as a "younger person" under 20 C.F.R. § 404.1563(c) (2015). As for her education, Plaintiff testified she completed high school, and in 2001, she completed an online computer course. (Tr. 34).

Following the hearing, on February 26, 2014, the ALJ entered an unfavorable decision denying Plaintiff's application for benefits. (Tr. 12-22). In this decision, the ALJ found Plaintiff met the disability insured status requirements under the Social Security Act through December 31, 2016. (Tr. 14, Finding 1). He also found Plaintiff had not engaged in substantial gainful activity since the alleged onset date of April 14, 2012. (Tr. 14, Finding 2). The ALJ determined that since the alleged onset date of disability, Plaintiff had severe impairments of Musculoskeletal Disorder (Back Impairment, degenerative disc disease of the cervical and lumbar spine); Musculoskeletal Disorder (Osteoarthritis, cervical and lumbar spine, hands, and feet with heel spurs); Musculoskeletal Disorder (Disorder of Muscles, Ligaments, and Fascia, fibromyalgia); Endocrine Disorder (Diabetes Mellitus with neuropathy); and obesity. (Tr. 14, Finding 3). He further determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 16, Finding 4).

In the decision, the ALJ considered the entire record and determined Plaintiff had the residual functional capacity ("RFC") to perform sedentary work except as follows:

> "claimant cannot climb ladders, ropes, or scaffolds. The claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The claimant can frequently, but not constantly, handle bilaterally. The claimant must avoid concentrated exposure to temperature extremes, wetness, humidity, and hazards, including driving as part of work." (Tr. 17, Finding 5).

The ALJ further determined Plaintiff was capable of performing past relevant work as a Phone Operator/Customer Service Representative, which was at the sedentary exertional level and semiskilled work. (Tr. 21, Finding 6). In making his determination, the ALJ relied upon the testimony of the VE as to the physical requirements of the Plaintiff's past relevant work. *Id*. Therefore, the ALJ determined Plaintiff had not been under a disability from April 14, 2012, through the date of the decision. (Tr. 21, Finding 7).

Plaintiff requested review by the Appeals Council of the February 26, 2014 decision by the ALJ. (Tr. 7). However, the Appeals Council denied her request for review of the decision. (Tr. 1-3). Thereafter, on July 22, 2015, Plaintiff filed the present appeal with this Court, (ECF No. 1), and the Parties consented to the jurisdiction of this Court. ECF No. 5. The case is now ready for decision.

**2.     Applicable Law:**

In reviewing this case, this Court is required to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. § 405(g) (2006); *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *See Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001).

As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record

that would have supported a contrary outcome or because the Court would have decided the case differently. *See Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *See Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that lasted at least one year and that prevents him or her from engaging in any substantial gainful activity. *See Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998); 42 U.S.C. § 423(d)(1)(A). The Act defines a "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A plaintiff must show that his or her disability, not simply his or her impairment, has lasted for at least twelve consecutive months. 42 U.S.C. § 423(d)(1)(A).

To determine whether the adult claimant suffers from a disability, the Commissioner uses the familiar five-step sequential evaluation. He determines: (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the Residual Functional Capacity (RFC) to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national

economy that the claimant can perform. *See Cox*, 160 F.3d at 1206; 20 C.F.R. § 404.1520(a)(4). The fact finder only considers the plaintiff's age, education, and work experience in light of his or her RFC if the final stage of this analysis is reached. *See* 20 C.F.R. § 404.1520(a)(4)(v).

**3.     Discussion:**

In her appeal brief, Plaintiff argues the following: 1) the ALJ failed to properly evaluate Plaintiff's credibility, and 2) the ALJ erred in making his RFC determination by failing to properly weigh the medical opinion evidence. ECF No. 12 at 9-16. Defendant responds that substantial evidence supports the ALJ's credibility determination, the weight assigned to the treating physician, and the ALJ's RFC determination. ECF No. 13 at 5-10. The Court will consider these arguments.

**A.     Credibility Determination**

Plaintiff claims the ALJ failed to properly evaluate his credibility. ECF No. 12 at 14-16. In assessing the credibility of a claimant, the ALJ is required to examine and to apply the five factors from *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984) or from 20 C.F.R. § 404.1529 and 20 C.F.R. § 416.929.[2] *See Shultz v. Astrue*, 479 F.3d 979, 983 (2007). The factors to consider are as follows: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the functional restrictions. *See Polaski*, 739 at 1322.

---

[2] Social Security Regulations 20 C.F.R. § 404.1529 and 20 C.F.R. § 416.929 require the analysis of two additional factors: (1) "treatment, other than medication, you receive or have received for relief of your pain or other symptoms" and (2) "any measures you use or have used to relieve your pain or symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.)." However, under *Polaski* and its progeny, the Eighth Circuit has not yet required the analysis of these additional factors. *See Shultz v. Astrue*, 479 F.3d 979, 983 (2007). Thus, this Court will not require the analysis of these additional factors in this case.

The factors must be analyzed and considered in light of the claimant's subjective complaints of pain. *See id*. The ALJ is not required to methodically discuss each factor as long as the ALJ acknowledges and examines these factors prior to discounting the claimant's subjective complaints. *See Lowe v. Apfel*, 226 F.3d 969, 971–72 (8th Cir. 2000). As long as the ALJ properly applies these five factors and gives several valid reasons for finding the Plaintiff's subjective complaints are not entirely credible, the ALJ's credibility determination is entitled to deference. *See id.*; *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). The ALJ, however, cannot discount Plaintiff's subjective complaints "solely because the objective medical evidence does not fully support them [the subjective complaints]." *Polaski*, 739 F.2d at 1322.

When discounting a claimant's complaints of pain, the ALJ must make a specific credibility determination, articulating the reasons for discrediting the testimony, addressing any inconsistencies, and discussing the *Polaski* factors. *See Baker v. Apfel*, 159 F.3d 1140, 1144 (8th Cir. 1998). The inability to work without some pain or discomfort is not a sufficient reason to find a Plaintiff disabled within the strict definition of the Act. The issue is not the existence of pain, but whether the pain a Plaintiff experiences precludes the performance of substantial gainful activity. *See Thomas v. Sullivan*, 928 F.2d 255, 259 (8th Cir. 1991).

In the present action, this Court finds the ALJ properly addressed and discounted Plaintiff's subjective complaints. In his opinion, the ALJ addressed the factors from 20 C.F.R. § 404.1529 and *Polaski* and stated inconsistencies between testimony and the record. Specifically, the ALJ noted the following: (1) Plaintiff's statements and testimony are inconsistent with the medical evidence; (2) Plaintiff's report of activities of daily living are inconsistent with her

complaints of disabling pain;[3] (3) Plaintiff reports she continues to search for sedentary work; (4) Medical records indicate Plaintiff is not always compliant with her medication, but when she is compliant, her conditions improve; and (5) Plaintiff has not completed the physical therapy recommended for her back condition. (Tr. 17-21).

These findings are valid reasons supporting the ALJ's credibility determination, and this Court finds the ALJ's credibility determination is supported by substantial evidence and should be affirmed. *See Lowe*, 226 F.3d at 971–72. Accordingly, the ALJ did not err in discounting Plaintiff's complaints of pain.

**B.     RFC Determination**

Plaintiff alleges the ALJ erred in his RFC determination. RFC is the most a person can do despite that person's limitations. *See* 20 C.F.R. § 404.1545. It is assessed using all relevant evidence in the record. *Id.* This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. *See Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. *See* 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. *See Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set

---

[3] Plaintiff reported in her July 5, 2012 Function Report she has no problems with personal care; prepares her own simple meals; does light house cleaning and laundry; drives; can go out alone; shops in stores for food; and works on her computer. (Tr. 166-169).

7

forth specifically a claimant's limitations and to determine how those limitations affect his RFC." *Id.*

In deciding whether a claimant is disabled, the ALJ considers medical opinions along with "the rest of the relevant evidence" in the record. 20 C.F.R. § 404.1527(b). "It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole." *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007), *citing Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001) (internal citations omitted).

The SSA regulations set forth how the ALJ weighs medical opinions. The regulations provide that "unless [the ALJ] give[s] a treating source's opinion controlling weight ... [the ALJ] consider[s] all of the following factors in deciding the weight [to] give to any medical opinion": (1) examining relationship; (2) treating relationship; (3) supportability of the opinion; (4) consistency; (5) specialization; and, (6) "any factors [the applicant] or others bring[s] to [the ALJ's] attention." 20 C.F.R. § 404.1527(c). The regulations provide that if the ALJ finds "that a treating source's opinion on the issue(s) of the nature and severity of [the applicant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and *is not inconsistent with the other substantial evidence in [the applicant's] record,* [the ALJ] will give it controlling weight." *Id.* at § 404.1527(c)(2) (emphasis added).

Plaintiff argues the ALJ erred in assigning less weight to Dr. Roxanne Marshall's October 1, 2012 Multiple Impairment Questionnaire, while giving greater weight to Dr. Marshall's letter regarding Plaintiff's disability filing. On October 1, 2012, Plaintiff presented in Dr. Marshall's clinic for an office visit. (Tr. 328). Dr. Marshall's clinic notes reflect Plaintiff

8

needed paperwork for her disability claim; Plaintiff needed medication refills; and Plaintiff's lab tests from the endocrinologist had somewhat improved. Plaintiff's examination yielded normal results, and no specific complaints were noted. Also on that day, Dr. Marshall authored a letter for disability purposes. (Tr. 330). The letter set forth Plaintiff's conditions of type 2 diabetes with peripheral neuropathy, degenerative joint disease of the LS spine, fibromyalgia, sleep apnea, midline disc protrusion at L5-S1, and bulging disc at L4-L5. Dr. Marshall's letter explained Plaintiff had pain on a daily basis, and any activity for extended periods with lifting over ten pounds and changes in the weather, seemed to increase her back and neck pain. The ALJ gave this opinion significant weight, and it was incorporated into the RFC determination where Plaintiff was found to be able to perform sedentary work, while avoiding concentrated exposure to extreme temperature, wetness, humidity, or hazards. (Tr. 17).

Nevertheless, Plaintiff asserts Dr. Marshall's Multiple Impairment Questionnaire, also from October 1, 2012, should have been given greater weight. (Tr. 333-340). The questionnaire was a checkbox form. A treating physician's checkmarks on a medical form are conclusory opinions that may be discounted if contradicted by other objective medical evidence in the record. *See Martise v. Astrue*, 641 F.3d 909, 926 (8th Cir. 2011) (*citing Stormo v. Barnhart*, 377 F.3d 801, 805-06 (8th Cir. 2004)). The ALJ specifically noted the extreme limitations set forth in the questionnaire, such as limiting Plaintiff to sitting, standing or walking for only one hour in an eight hour workday, were not supported by objective findings in any of the medical evidence of record. No other treating or examining physician's records indicated similar limitations on Plaintiff's work activity were placed on Plaintiff as a result of her conditions. *See Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (lack of physician-imposed restrictions militates against a finding of total disability). The ALJ has the responsibility to determine which findings are

9

inconsistent and which opinions should be given greater weight than other opinions. *See Brown v. Astrue*, 611 F.3d 941, 951-52 (8th Cir. 2010).

To the extent Plaintiff argues the ALJ also erred in giving Dr. Marshall's questionnaire less weight because she opined the limitations set forth in the questionnaire had applied since September 10, 1999, this argument is without merit. It is clear from the record and Plaintiff's testimony that she worked successfully for many years after 1999. (Tr. 35-42, 54-56). "Working generally demonstrates an ability to perform a substantial gainful activity." *Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005).

Plaintiff also argues there is a lack of additional medical evidence to support the ALJ's RFC determination; however, medical evidence supporting an RFC of sedentary work with limitations is summarized as follows. Prior to the alleged onset date, Plaintiff was seen by Dr. Brad Thomas at Little Rock Neurology Clinic for her low back and neck pain. Dr. Thomas examined Plaintiff on two occasions, June 1, 2011 and July 11, 2011. (Tr. 202, 204-208). Dr. Thomas' notes reflect Plaintiff had full range of motion in her lumbar spine and in all joints of her lower extremities; no tenderness to palpation of lumbosacral spine and paraspinal regions; negative straight leg test bilaterally; full strength throughout bilateral upper and lower extremities; and normal gait. An MRI of Plaintiff's lumbar spine performed on June 1, 2011 revealed some mild disc bulge at L4-5 and L5-6, but no significant neural impingement. An x-ray of Plaintiff's lumbar spine showed some mild degenerative changes, but no fractures or subluxations. Dr. Thomas opined on both occasions that Plaintiff did not need surgery, and concluded on July 18, 2011 that her problem was more degenerative in nature and more analogous to fibromyalgia or rheumatoid arthritis. He also noted Plaintiff had been a smoker for the last thirty years.

On June 30, 2011, a MRI of Plaintiff's cervical spine was performed. The imaging revealed degenerative disc disease with disc osteophyte ridging at C5-6 and C6-7, but no disc herniation or foraminal stenosis. (Tr. 230).

Plaintiff was also examined by Dr. Russell Branum, at Fort Smith Rheumatology. In his August 17, 2011 assessment, Dr. Branum observed Plaintiff's tender point examination for fibromyalgia was diffusely moderately positive, noted possible co-existing osteoarthritis, and prescribed Lyrica. On January 23, 2012, Dr. Branum's notes reveal rheumatoid arthritis testing was negative, and he did not believe Plaintiff had this condition. (Tr. 250). Dr. Branum noted Plaintiff's improvement with Lyrica, recommended warms soaks in the tub periodically, stretching three times daily, and walking for exercise. His notes also reflect Plaintiff is a smoker. At Plaintiff's next visit with Dr. Branum, his clinic notes indicate symptoms of possible carpal tunnel syndrome, diffuse fibromyalgia, and bilateral hand and foot pain. (Tr. 324). Dr. Branum also noted Plaintiff's report that she was pursuing employment of a sedentary nature at the time. An x-ray of Plaintiff's feet showed findings consistent with heel spurs and osteoarthritis, and an x-ray of Plaintiff's hands suggested early bilateral osteoarthritis. (Tr. 323).

On January 31, 2012, Dr. Marshall's notes indicate Plaintiff's blood sugar was uncontrolled, with a fasting blood sugar reading of 222, and Plaintiff was not compliant with her diet or medication. Dr. Marshall strongly encouraged Plaintiff to get back on her Metformin and remain on her diabetic diet. (Tr. 267).

On July 27, 2012, Dr. Valeria Malak completed a physical RFC assessment form. (Tr. 305-311). Dr. Malak concluded Plaintiff had the following exertional limitations: could occasionally lift and/or carry twenty pounds; could frequently lift and/or carry ten pounds; could

stand, sit and/or walk approximately six hours in an eight-hour workday; and could push and pull with no limitations. Dr. Malak found Plaintiff had no postural, manipulative, or environmental limitations. Dr. Malak specifically noted her consideration of Plaintiff's obesity and her MRI's. Dr. Malak also noted Plaintiff's activities of daily living, including caring for her husband, caring for her pets with help from her husband, managing her own personal care with no problems, preparing simple meals daily, doing light household chores, going out alone, driving, and shopping in stores. Dr. Malak's comments reflect Plaintiff could lift fifteen pounds and she needed no assistive devices ambulation. Based on the evidence before her, Dr. Malak opined Plaintiff would be able to perform light work with the postural limitations set forth above. Dr. Dan Gardner affirmed this physical RFC Assessment on October 30, 2012. (Tr. 344).

On August 21, 2012, Plaintiff was referred to Dr. William Knubley, a neurologist, for evaluation of numbness in her fingers and toes and dizziness. (Tr. 382-384). Dr. Knubley's clinic notes reveal he believed her symptoms were more likely related to her diabetes that was not adequately controlled. Dr. Knubley also noted Plaintiff smoked a pack of cigarettes per day. During a visit to Dr. Knubley's office on October 2, 2012, Plaintiff's neuropathy was confirmed and clinic notes reveal her diabetes had improved. (Tr. 380). Dr. Knubley saw Plaintiff again on February 28, 2013, for complaints of fibromyalgia and painful neuropathy. (Tr. 377). On that day, Plaintiff's straight left leg raise was negative, and her gait was relatively stable but tender over the occipital nerve region and diffusely over the neck and shoulder area. Dr. Knubley noted Plaintiff's vitamin D deficiency and that treatment could aggravate Plaintiff's fibromyalgia symptoms. Dr. Knubley also noted Metformin, used to treat Plaintiff's diabetes, could aggravate Plaintiff's B12 absorption and her neuropathy.

On March 19, 2013, Dr. Knubley continued treating Plaintiff for complaints of neuropathy, along with symptoms of fibromyalgia, headaches, possible vitamin deficiency, left radicular leg pain, and new right radicular leg pain. An Electromyogram Report from March 5, 2013, showed some neurogenic changes from mild diabetes, but no evidence of an active radiculoplexopathy and no clear conclusive evidence of obvious neuropathy based on the nerve conduction study. (Tr. 403). An additional Electromyogram Report on March 27, 2013, showed mild axonal neuropathy from diabetes, unchanged from the previous study. (Tr. 402).

On April 10, 2013, Dr. Shawn Moore saw Plaintiff for a neurosurgical consultation regarding her chronic back pain and right lower extremity sciatica. (Tr. 431). Dr. Moore reviewed Plaintiffs March 2013 MRI results, which revealed mild spondylosis, no significant central stenosis, small right paracentral disc herniations at L4-5 and L5-S1 with mild lateral recess stenosis. Dr. Moore did not recommend surgery, but suggested Plaintiff see Dr. Swicegood for epidural steroid injections and begin physical therapy. There is no evidence Plaintiff began physical therapy; however, she was evaluated by Dr. Swicegood and received steroid injections on April 22, 2013 and on May 20, 2013. (Tr. 405-409). Dr. Swicegood's notes reveal Plaintiff was a smoker and cessation counseling was performed.

The ALJ also took into consideration, Plaintiff's subjective complaints of pain. While plaintiff testified at the hearing she suffered from back pain, leg pain, fibromyalgia pain, and pain in her hands and feet from neuropathy, she stated on her July 5, 2012 Function Report she did light housework and laundry, cooked dinner, took care of pets with her husband's help, had no problems with personal care, and shopped in stores for food. (Tr. 42-47, 166-169). Plaintiff reported she worked on her computer daily. As far as getting around, Plaintiff stated she could

drive a car, ride in a car, and go out alone. She was able to pay bills, count change, handle a savings account and use a checkbook.

Based on the record as a whole, the Court finds substantial evidence to support the ALJ's RFC determination of sedentary work with limitations.

### 4. **Conclusion:**

Accordingly, the undersigned finds the ALJ's decision, denying benefits to the Plaintiff, is supported by substantial evidence and should be affirmed. A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 59.

**ENTERED this 27th day of May 2016.**

>                       /s/ Barry A. Bryant
>                       HON. BARRY A. BRYANT
>                       U.S. MAGISTRATE JUDGE